COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-290-CR

 

 

EX PARTE

 

JUAN DAVID HERNANDEZ



 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------      

Appellant Juan David Hernandez appeals from the
trial court=s order denying him relief on
his application for writ of habeas corpus filed pursuant to article 11.072 of
the Texas Code of Criminal Procedure.  In
seven points, Hernandez argues that he was denied due process and equal
protection of the law, that he received ineffective assistance of counsel at
the plea proceeding, and that his guilty plea was not voluntarily, freely, and
knowingly made.  We will affirm.








I.  Factual and Procedural Background

Hernandez is a Mexican national who married a
United States citizen in 1980 and later became a permanent resident of the
United States in 1989.  On September 16,
2000, Hernandez was arrested for possessing a controlled substance, cocaine, of
more than one but less than four grams. 
The arresting officers did not advise Hernandez that he had a right to
contact the Mexican Consulate.  A grand
jury indicted Hernandez, who subsequently pleaded guilty.  A Texas district court placed Hernandez on a
four-year term of deferred adjudication community supervision, which
subsequently expired in November 2004 without further event. 








In 2006, the federal government initiated
deportation proceedings against Hernandez based at least in part on the guilty
plea and deferred adjudication community supervision order challenged
herein.  The Federal Government set a
hearing on the removal proceedings for May 23, 2006.  But before that hearing took place, Hernandez
filed an application for an article 11.072 writ of habeas corpus in the trial
court that initially ordered the deferred adjudication community supervision.  Tex.
Code Crim. Proc. Ann. art. 11.072 (Vernon Supp. 2006).  The trial court conducted a hearing by
affidavit only, considered the affidavit of Hernandez=s trial
counsel at the previous plea proceedings, adopted the State=s
proposed findings of fact and conclusions of law, and ultimately denied
relief.  Hernandez timely filed his
notice of appeal. 

II.  Writs in Community Supervision Cases

Article 11.072 provides an opportunity for habeas
corpus relief for defendants convicted of a felony or misdemeanor and ordered
to community supervision.  See Tex. Code Crim. Proc. Ann. art. 11.072,
' 1; Ex
parte Cummins, 169 S.W.3d 752, 756 (Tex. App.CFort
Worth 2005, no pet.).  Article 11.072
provides that at "the time the application is filed, the applicant must
be, or have been, on community supervision, and the application must challenge
the legal validity of: (1) the conviction for which or order in which community
supervision was imposed; or (2) the conditions of community
supervision."  Tex. Code Crim. Proc. Ann. art. 11.072,
' 2(b). 








If the application meets these standards, it
shall be filed in the court where community supervision was imposed.  Tex.
Code Crim. Proc. Ann. art. 11.072, '
2(a).  Upon determination of whether the
applicant is entitled to relief, the trial court "shall enter a written
order including findings of fact and conclusions of law."  Id., art. 11.072, ' 7.  If the trial court denies the application
"in whole or in part, the applicant may appeal under Article 44.02 and
Rule 31, Texas Rules of Appellate Procedure.@  Id., art. 11.072, ' 8; Arreola
v. State, 207 S.W.3d 387, 390 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).

In reviewing a trial court's decision to grant or
deny habeas corpus relief, we view the facts in the light most favorable to the
trial court's ruling.  Ex parte Twine,
111 S.W.3d 664, 665 (Tex. App.CFort
Worth 2003, pet. ref=d).  In conducting our review, we afford almost
total deference to the judge's determination of the historical facts that are
supported by the record.  Id.

III.  Vienna Convention Claim Procedurally
Defaulted

 

        In his first point, Hernandez contends
that he was denied due process and equal protection of the law when arresting
officers failed to advise him of his rights under the Vienna Convention.  Hernandez employs an article 11.072 writ to
challenge the community supervision order by arguing that the due process and
equal protection violations ultimately led to the order.  








On appeal from a plea bargain, an appellant may
challenge only matters raised by pretrial motion and matters that the trial
court gives permission to appeal.  Tex. R. App. P. 25.2(a)(2); Chavez
v. State, 183 S.W.3d 675, 680 (Tex. Crim. App. 2006).  Here, there were no pretrial motions, and the
trial court's plea papers stated that "[t]his Court seldom consents to an
appeal where conviction is based upon a Guilty Plea."  Although Hernandez predicates his due process
and equal protection claims on individual rights he claims that the Vienna
Convention confers upon him, we need not address whether the Vienna Convention
confers judicially enforceable rights because claims brought under Article 36
of the Vienna Convention are nevertheless subject to state procedural default
rules.  See Sanchez-Llamas v. Oregon,
           U.S.         ,            , 126 S. Ct. 2669, 2687(2006); Ex
parte Medellin, No. AP-75207, 2006 WL 3302639, at *8 (Tex. Crim. App. Nov.
15, 2006), cert. granted, Medellin v. Texas, 75 USLW 3583 (U.S.
Apr. 30, 2007) (No. 06-984).  Because
Hernandez never raised this issue in the trial court, the rules of procedural
default prevent him from asserting it in a habeas proceeding.  See Ex parte Boyd, 58 S.W.3d 134, 136
(Tex. Crim. App. 2001); see also Ex parte Medellin, 2006 WL 3302639, at
*7-8 (holding that Vienna Convention complaints are subject to Texas procedural
default rules).  Accordingly, we overrule
Hernandez=s first point.

IV.  No Request or Need for Independent
Interpreter








In his second point, Hernandez argues that he was
denied due process, equal protection of the law, and a fair trial because the
court failed to provide an independent interpreter to ensure his understanding
of the plea proceedings.  The Texas
Government Code states that "[a] court shall appoint a certified court
interpreter or a licensed court interpreter if a motion for the appointment of
an interpreter is filed by a party or requested by a witness in a civil or
criminal proceeding in the court."  Tex. Gov't Code Ann. ' 57.002(a)
(Vernon Supp. 2006).  A court may also,
on its own motion, appoint an interpreter. 
See id. ' 57.002(b).  But when the record is devoid of any request
for an interpreter and does not demonstrate that a defendant cannot understand
the proceedings, the defendant waives the right to complain of the trial court=s
failure to appoint an interpreter.  See
Hernandez v. State, 986 S.W.2d 817, 822 (Tex. App.CAustin
1999, pet. ref=d).








After thoroughly reviewing the record, we find no
motion requesting the appointment of an interpreter and the record does not
reflect that Hernandez could not understand the proceedings.  To the contrary, although Hernandez=s wife
filed an affidavit supporting his application for a writ of habeas corpus in
the trial court, stating that Ait was
very apparent that [Hernandez] did not understand English,@ the
attorney representing Hernandez at the plea proceedings filed her own affidavit
indicating that she was a native Spanish speaker, that she learned to speak
Spanish as her first language, that she was still fluent in Spanish, and that
she communicated with Hernandez in Spanish. 
Viewing the evidence in the light most favorable to the trial court=s
ruling, we hold that Hernandez was not denied due process, equal protection, or
a fair trial by the trial court=s
failure to appoint an interpreter.  See
Ex parte Twine, 111 S.W.3d at 665-66; Rivera v. State, 981 S.W.2d
336, 338 (Tex. App.CHouston [14th Dist.] 1998, no
pet.) (holding that trial court does not err by failing to appoint interpreter
where defense counsel is capable of interpreting for the defendant).   We
therefore overrule Hernandez=s second
point.

V.  Effective Assistance of Counsel

In his third, fourth, fifth, and sixth points,
Hernandez asserts that his trial counsel provided ineffective assistance by
failing to challenge the lack of  notice
to him of his right to access to a Mexican Consul, failing to ensure that the
court appointed an interpreter, failing to investigate Hernandez=s
resident status, and failing to advise him of possible immigration consequences,
respectively.  








To prevail on a claim of ineffective assistance
of counsel, the defendant must show that trial counsel's performance was
deficient and that a reasonable probability exists that the result of the
proceeding would have been different but for the deficiency.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984). 
The first prong of the Strickland test requires that the
appellant show that counsel's performance fell below an objective standard of
reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).  Thus, the defendant must prove
objectively, by a preponderance of the evidence, that trial counsel's
representation fell below professional standards. Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002). 
The second prong requires that the defendant show a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d
at 812.  Under the first prong, however,
a reviewing court must indulge in a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S.
Ct. at 2065.  Any allegation of
ineffectiveness must be firmly founded in the record, and the record must
demonstrate affirmatively the alleged ineffectiveness. Thompson, 9
S.W.3d at 813.

A.  Failure to Challenge Arresting Officer=s Failure to Advise
Defendant 

of
Right to Contact Foreign Consulate Not Below Professional Standards

 








In his third point, Hernandez
contends that his trial counsel provided ineffective assistance by failing to
challenge the arresting officer=s
failure to advise Hernandez that he had the right to access the Mexican Consulate.       Here,
Hernandez=s trial counsel indicated that
she had experience with clients who had contacted the Mexican Consulate and
that she had also attempted to contact the Consulate herself on behalf of other
clients.  In her affidavit, she also
stated that she Apersonally advised [Hernandez]
of his right to contact the Mexican Consul[ate] before accepting the plea. . .
. I also encouraged him to seek advice from an immigration attorney before he
entered a plea.@ 

Hernandez cites no professional
standards that indicate that his trial counsel should have challenged the arresting
officer=s failure
to advise him of the right to consult the Mexican Consulate.  His trial counsel did advise him of his right
to personally contact the Mexican Consulate, and advised him to contact an
immigration attorney before entering the plea. 
Considering both the strong presumption that this conduct fell within
the wide range of reasonable professional assistance, see Strickland,
466 U.S. at 689, 104 S. Ct. at 2065, and Hernandez=s
failure to prove, by a preponderance of the evidence, that the range of
professional assistance included challenging the arresting officer=s
alleged omission here, we hold that his trial counsel was not deficient.  See Mitchell, 68 S.W.3d at 642.  Accordingly, we overrule Hernandez=s third
point.

B.  No Firmly Founded Evidence
in Record on Remaining Alleged 

Ineffective Assistance Grounds

 








Regarding Hernandez=s
remaining ineffective assistance pointsCthat his
trial counsel provided ineffective assistance by failing to ensure that the
court appointed an interpreter, by failing to investigate Hernandez=s
resident status, and by failing to advise him of possible immigration
consequencesCwe are confronted with
conflicting evidence in the record.  On
one hand, Hernandez=s wife filed an affidavit
stating that Ait was very apparent that
[Hernandez] did not understand English@ and
that Hernandez=s trial counsel Anever
informed [Hernandez] of the immigration consequences of the plea nor did he
inquire into [Hernandez=s] citizenship status.@  On the other hand, however, Hernandez=s trial
counsel filed an affidavit stating,

I
communicated with [Hernandez] in Spanish. 
I questioned him on his status in the United States and was aware that
he was a permanent resident.  I
admonished him of all of his rights: his rights under the Vienna Convention,
his rights that flowed from the Constitution of the United States and his
rights under the laws of the State of Texas. 
I discussed with him and explained the possible impact on his residency
status in the United States.

 

Even if we give equal weight to
both of these affidavits, Hernandez has failed to prove, by a preponderance of
the evidence, that his trial counsel=s
conduct fell below professional standards. 
The record contains evidence that Hernandez=s
counsel both did and did not investigate his resident status.  The record also contains evidence that
Hernandez=s counsel did and did not advise
him of possible immigration consequences. 
At most, the record contains conflicting evidence.








Viewing the evidence in the
light most favorable to the trial court=s
ruling, as we must, we hold that the conflicting evidence in the record here
does not satisfy the requirement that counsel=s
ineffectiveness be founded in the record. 
See Thompson, 9 S.W.3d at 813. 
Accordingly, Hernandez did not meet the first prong of the Strickland
test.  See id.  We therefore overrule Hernandez=s
fourth, fifth, and sixth points.

VI.  Voluntary Guilty Plea

In his seventh point, Hernandez
contends that his guilty plea was not made knowingly, voluntarily, and freely
because his trial counsel failed to warn 
him of immigration consequences and failed to investigate his
citizenship status and because the trial court and his trial counsel failed to
secure an independent interpreter.   

When the record indicates that
the trial court properly admonished the defendant, a prima facie showing exists
that the guilty plea was made voluntarily and knowingly.  See Martinez v. State, 981 S.W.2d 195,
197 (Tex. Crim. App. 1998); Arreola, 207 S.W.3d at 391.  At that point, the burden shifts to the
defendant to show that he entered the plea without understanding the
consequences.  See Arreola, 207
S.W.3d at 391.  Where the defendant
attested that he understood the nature of his plea and that it was voluntary at
the time he entered his guilty plea, he bears a heavy burden to show that his
plea was involuntary.  See id;
Dusenberry v. State, 915 S.W.2d 947, 949 (Tex. App.CHouston
[1st Dist.] 1996, pet. ref=d).








An election to plead guilty,
however, is not knowing and voluntary when based upon the erroneous advice of
counsel.  See Ex parte Battle, 817
S.W.2d 81, 83 (Tex. Crim. App. 1991). 
Notwithstanding counsel=s
advice, deportation and other adverse immigration consequences are generally
considered to be collateral consequences of a guilty plea.  See State v. Jimenez, 987 S.W.2d 886,
888 (Tex. Crim. App. 1999).  Any failure
of counsel to advise a defendant of the possibility of deportation or other
collateral consequences of a guilty plea does not render the plea
involuntary.  See id.

Hernandez argues that to be a
valid guilty plea, Athere must be an admonishment
warning of the immigration consequences of the plea and inquiring into the
citizenship status of the accused@ and
cites article 26.13(a)(4) of the code of criminal procedure.  But that code provision merely requires that
the trial court admonish the defendant that the plea could result in
deportation, exclusion from admission to this country, or denial of naturalization
under federal law.  See Tex. Code Crim. Proc. Ann. art.
26.13(a)(4).  The trial court here gave
Hernandez just such written admonishments.

In a paragraph titled ACitizenship,@ which
appears in bold, underlined type, the court admonished Hernandez that A[i]f you
are not a citizen of the United States of America, a plea of guilty or nolo
contendere for this offense may result in deportation, the exclusion from
admission to this country, or the denial of naturalization under federal law.@  Hernandez signed these written
admonishments.  Hernandez also signed a
written waiver indiciating,








I
am able to read the English language and fully understand each of the written
plea admonishments given by the Court and I have no questions.  If I am unable to read the English language,
then my attorney or an interpreter for my attorney has read this entire
document to me in my own language and I fully understand each of the written
plea admonishments given by the Court and I have no questions.

 

Hernandez further attested that
he was Aaware of
the consequences of [his] plea@ and
that the plea was Aknowingly, freely, and
voluntarily entered.@ 


By
admonishing Hernandez in writing, the trial court established a prima facie
showing that Hernandez=s plea was made voluntarily and
knowingly.  See Martinez, 981
S.W.2d at 197; Arreola, 207 S.W.3d at 391.  Because a prima facie showing existed, and
because Hernandez attested that he understood the nature of his plea and that
it was voluntary at the time he entered the plea, Hernandez has a heavy burden
to show that he entered the plea without knowing the consequences.  See Arreola, 207 S.W.3d at 391.

The only evidence supporting Hernandez=s claim that his plea was
not made knowingly, voluntarily, and freely came from his wife=s affidavit.  Her affidavit stated that Hernandez=s Acounsel never advised him
of any immigration consequences associated with his plea (which was entered at
the insistence of his counsel at the time).@  But the
same counsel who assisted Hernandez in entering the plea filed her own
affidavit stating that Hernandez=s other counsel of record and herself were








 

both
aware of [Hernandez=s] immigration status and
advised him of the consequences of his plea. [We] both communicated with
[Hernandez] in Spanish. . . . While reviewing the portion of the waiver of
rights that explains immigration consequences[,] I once again explained to
[Hernandez] that the immigration issues were grave because he was a permanent
resident.  I explained that even though
he was not convicted I could not assure that he would not be picked up by
immigration when he reported to probation. 
I could not promise him that he would not be deported in the future or
even denied reentry into the United States. . . . I also encouraged [Hernandez]
to seek advice from an immigration attorney before he entered a plea.  I could not override his decision, I could
only advise him of the consequences of his plea.  Deportation or removal was a possible
consequence. [Hernandez] was thoroughly admonished of his rights under State
law, the Vienna Convention[,] and possible immigration ramifications.  It was his decision not to seek advice from
an immigration attorney.  It was his
decision[,] and his decision alone[,] to accept the State=s offer.

 

The trial court relied upon this
affidavit in its order denying Hernandez=s relief
and entered findings of fact essentially adopting the above cited portions of
Hernandez=s trial counsel=s
affidavit.  The trial court also entered
findings of fact that A[t]here is no credible evidence
that [Hernandez] did not understand the admonishments or the consequences of
his plea@ and
that there was Aevidence that [Hernandez] was
fully admonished and did understand the consequences, including possible
immigration consequences.@ 








Viewing all of the evidence in
the light most favorable to the trial court=s
ruling, we hold that Hernandez has not met his burden to show that his plea was
not made knowingly, voluntarily, and freely with a full understanding of the
consequences of the guilty plea.  See
Arreola, 207 S.W.3d at 391.  We
therefore overrule Hernandez=s
seventh point.

VII.  Conclusion

Having dismissed Hernandez=s first
point and having overruled the remainder of Hernandez=s
issues, we affirm the trial court=s
judgment denying Hernandez habeas relief.

 

PER CURIAM

PANEL
F: WALKER, LIVINGSTON, and DAUPHINOT, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
May 24, 2007











[1]See Tex. R. App. P. 47.4.